UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AARON A. SMITH,

                Petitioner,

v.                                    Case No. 3:03-cv-1036-J-32MCR

JAMES V. CROSBY, JR.,
et al.,

                Respondents.

_____

**ORDER**[1]

**I. Status**

Petitioner Aaron A. Smith, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) and Memorandum of Law (Doc. #2) pursuant to 28 U.S.C. § 2254 on December 8, 2003. Petitioner challenges a 1999 state court (Duval County, Florida) judgment of conviction for sale or delivery of cocaine, possession

_____

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

of cocaine and possession of less than twenty grams of cannabis on one ground: Petitioner's conviction was obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to the defense in violation of <u>Brady</u>[2] when it failed to disclose its own investigation of a key State witness (Officer Aric Sinclair) who has since been indicted and convicted in federal court for conducting illegal searches and seizures, drug offenses and murder while acting in his capacity as a law enforcement officer. Petition at 5.

Respondents filed an Answer to Petition (Doc. #12) (hereinafter Response). They submitted exhibits in support of their Response.[3] Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment. <u>See</u> Court's Order to Show Cause and Notice to Petitioner (Doc. #5). Petitioner has properly responded to Respondents' Response. <u>See</u> Petitioner's Reply (Doc. #15). This case is now ripe for review.

## II. Procedural History

After a jury trial, Petitioner was convicted of sale or delivery of cocaine, possession of cocaine and possession of less than twenty grams of cannabis on November 18, 1999. Ex. D, Transcript of the Trial Proceedings (hereinafter Tr.) at 474. On

---

[2] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

[3] Respondents' exhibits will be hereinafter referred to as "Ex."

December 9, 1999, Petitioner was sentenced to twenty years of incarceration, as a habitual felony offender, for the sale or delivery of cocaine, five years of incarceration for possession of cocaine (to run concurrently) and one year of incarceration for possession of less than twenty grams of cannabis (to run concurrently). Ex. D at 162; Ex. E at 93-100. On February 6, 2001, the appellate court per curiam affirmed without a written opinion. Smith v. State, 778 So.2d 286 (Fla. 1st DCA 2001); Ex. A. The mandate issued on February 22, 2001. Ex. A.

On February 1, 2002, Petitioner Smith, through counsel, filed a motion for post conviction relief pursuant to Fla. R. Crim P. 3.850, raising the following claim:  "failure to disclose evidence of investigation, plea and cooperation agreement and admissions of felony offenses of material state witness was *Brady* and *Bagley* violation." Ex. B. On September 20, 2002, the trial court denied the motion for post conviction relief. Ex. E at 89-92. On September 15, 2003, the appellate court per curiam affirmed without a written opinion. Smith v. State, 855 So.2d 62 (Fla. 1st DCA 2003); Ex. C. The mandate issued on October 1, 2003. Ex. C.

Petitioner's Petition (dated December 4, 2003, and filed in this Court on December 8, 2003) is timely filed within the one-year period of limitation. See 28 U.S.C. § 2244(d); Response at 3; Court's Order (Doc. #8), filed February 25, 2004.

### III. EVIDENTIARY HEARING

"Section 2254(e)(2) severely limits the circumstances in which a district court may properly conduct an evidentiary hearing." LeCroy v. Sec'y Fla. Dep't of Corr., 421 F.3d 1237, 1259 (11th Cir. 2005) (citation and footnote omitted); McNair v. Campbell, 416 F.3d 1291, 1297-1300 (11th Cir. 2005) (stating that "AEDPA mandates that a petitioner who failed to develop the factual basis for a claim in state court shall not be granted a federal evidentiary hearing absent certain extraordinary circumstances"); Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1333-37 (11th Cir. 2004) (stating that "the current § 2254(e)(2) is specific to those situations in which an evidentiary hearing is requested to develop facts that the petitioner failed to develop in state court" and further noting that "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required."), cert. denied, 125 S.Ct. 2962 (2005).

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. This Court can "adequately assess [Petitioner's] claim without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004); Breedlove v. Moore, 279 F.3d 952, 960 (11th Cir. 2002) (citation omitted) (stating a habeas petitioner is entitled to an evidentiary hearing if he alleges facts that, if proved at the hearing, would entitle him to relief),

4

cert. denied, 537 U.S. 1204 (2003).   Therefore, an evidentiary hearing will not be conducted by this Court.

### IV.   STANDARD OF REVIEW

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).   Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA:

> Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners.   Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996.   AEDPA applies to all petitions filed after its effective date. . . .
>
> AEPDA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by establishing a deferential standard for reviewing state court judgments in these cases.   Williams v. Taylor,

529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  Subsection (d) of § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

> AEDPA also makes clear that substantial deference is to be accorded a state court's findings of fact.  Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

<u>Henderson v. Campbell</u>, 353 F.3d 880, 889-891 (11th Cir. 2003) (footnote omitted), <u>cert</u>. <u>denied</u>, 125 S.Ct. 44 (2004).

Clearly, the new 28 U.S.C. § 2254(d) creates a more deferential standard for federal court review of state court adjudications:  "[u]nless a state court decision is directly

contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness." Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003); Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that the Ohio Court of Appeals' decision was not "contrary to" or an "unreasonable application" of clearly established federal law and stressing "the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)").

The "contrary to" and "unreasonable application" clauses have independent meaning and provide separate bases for federal habeas review:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523 (O'Connor, J., concurring). The "contrary to" clause "suggests that the state court's decision must be substantially different" from the controlling legal precedent. Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, --- U.S. ---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405, 120 S.Ct. at 1519). A state court's decision that applies the correct legal rule would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law. See Williams, 529 U.S. at 404-06, 120 S.Ct. at 1519-20 (O'Connor, J., concurring).

. . . .

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 414, 120 S.Ct. at 1523 (O'Connor, J., concurring). In deciding this issue, the federal court should consider whether the state court's application of the law was objectively unreasonable and should not apply the subjective "all reasonable jurists" standard. <u>Id</u>. at 409-10, 120 S.Ct. at 1521-22. The Supreme Court recently adhered to its pronouncements in <u>Williams</u>, stating that "we stressed in <u>Williams</u> that an unreasonable application is different from an incorrect one." <u>Bell v. Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). The Court further noted that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" <u>Id</u>. (quoting <u>Williams</u>, 529 U.S. at 411, 120 S.Ct. at 1522 (O'Connor, J., concurring)).

<u>Wellington v. Moore</u>, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, "we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." <u>McIntyre v. Williams</u>, 216 F.3d 1254, 1258 (11th Cir. 2000).

8

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert. denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claim was adjudicated on the merits in the state courts, it must be evaluated under the new § 2254(d).

9

## V. The Applicable Law

The Eleventh Circuit has recently set forth the applicable law governing a claim under Brady v. Maryland, 373 U.S. 83 (1963).

> In Brady v. Maryland, the Supreme Court placed an affirmative duty on the prosecution to reveal any "evidence [that] is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196-97. This duty covers "[i]mpeachment evidence . . . as well as exculpatory evidence." United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). The Brady rule applies to evidence possessed by the prosecution team, which includes both the investigators and prosecutors. See United States v. Meros, 866 F.2d 1304, 1309 (11th Cir. 1989).
>
> Three elements establish a Brady violation: (1) the evidence must be favorable to the accused, because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice.[4] See Kelley v. Sec'y for Dep't of Corrs., 377 F.3d 1317, 1354 (11th Cir. 2004) (citing Strickler v. Greene, 527 U.S. 263,

---

[4] Most recently, the Eleventh Circuit has restated the elements necessary to establish a Brady violation. The petitioner must prove that (1) the government possessed evidence favorable to the defense; (2) *the defendant did not possess the evidence and could not have obtained it with any reasonable diligence*; (3) the government suppressed the favorable evidence; and, (4) the evidence was material in that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. United States v. Neufeld, No. 04-10386, 2005 WL 3055204, at *4 (11th Cir. Nov. 16, 2005) (citation omitted); LeCroy v. Sec'y Fla. Dep't of Corr., 421 F.3d 1237, 1268 (11th Cir. 2005) (citation omitted); Chandler v. Moore, 240 F.3d 907, 915 (11th Cir.) (citation omitted), cert. denied, 534 U.S. 1057 (2001).

281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286
(1999)).  <u>Brady</u> does not require that the
prosecution "deliver [its] entire file to
defense counsel, but only [that it] disclose"
material evidence.  <u>Bagley</u>, 473 U.S. at 675,
105 S.Ct. at 3380 (footnote omitted).

Evidence is prejudicially material only
"if there is a reasonable probability that,
had the evidence been disclosed to the
defense, the result of the proceeding would
have been different.  A 'reasonable
probability' is a probability sufficient to
undermine confidence in the outcome." <u>Bagley</u>,
473 U.S. at 682, 105 S.Ct. at 3383.  "The
question is not whether the defendant would
more likely than not have received a different
verdict with the evidence, but whether in its
absence he received a fair trial, understood
as a trial resulting in a verdict worthy of
confidence." <u>Kyles v. Whitley</u>, 514 U.S. 419,
434, 115 S.Ct. 1555, 1565-66, 131 L.Ed.2d 490
(1995).  To meet this standard, "the defendant
does not need to demonstrate that, after
discounting the inculpatory evidence in light
of the evidence in question, there would not
have been enough evidence to convict him."
<u>Taylor v. Singletary</u>, 122 F.3d 1390, 1395
(11th Cir. 1997) (citation and quotation
omitted).  Instead, the defendant must show
that the suppressed evidence "could reasonably
be taken to put the whole case in such a
different light as to undermine confidence in
the verdict." <u>Id</u>.

<u>Stephens v. Hall</u>, 407 F.3d 1195, 1203 (11th Cir.), <u>cert</u>. <u>denied</u>,

126 S.Ct. 278 (2005); <u>see</u> <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004)

(setting forth the three essential elements of a <u>Brady</u> claim).

## VI. Findings of Fact and Conclusions of Law

Petitioner claims his conviction was obtained by the

prosecution's failure to disclose evidence favorable to the defense

in violation of <u>Brady</u>.  Specifically, he alleges that Officer

11

Sinclair was the target of an ongoing joint federal-state police corruption investigation, and the prosecution failed to disclose its investigation of Officer Sinclair, a key State witness, who has since been indicted and convicted in federal court. Respondents contend that Petitioner has raised a state law issue that is not cognizable in a habeas corpus proceeding in federal court (Response at 3-4); however, this Court concludes that he has raised a federal constitutional claim that is cognizable on habeas corpus review.

Respondents concede, and this Court agrees, that Petitioner has properly exhausted this claim in state court by raising it in his Rule 3.850 motion. Id. at 4-5, 9. The trial court denied the Rule 3.850 motion, and the appellate court per curiam affirmed. In denying the Rule 3.850 motion, the trial court correctly identified Brady as providing the governing legal principle and also properly set forth the elements of a successful Brady claim, stating in pertinent part:

> In the instant Motion, Defendant raises one ground for relief. It appears that Defendant is claiming he was denied due process of law based upon Brady v. Maryland, 373 U.S. 83 (1963). Specifically, Defendant alleges in his Motion that the State failed to disclose information that one of the arresting officers in the instant case was the subject of a federal investigation concerning police corruption. Defendant asserts that the State had information concerning a federal investigation of former Jacksonville Sheriff's Officer Aric Sinclair at the time of Defendant's trial. Defendant contends that the testimony of Officer Sinclair at trial, as well as during an evidentiary hearing on

Defendant's Motion to Suppress, was key to obtaining a conviction against Defendant. Defendant, further, asserts that had the State disclosed the information concerning Officer Sinclair, the Court would not have allowed Sinclair to testify and would not have accepted Sinclair's testimony as the "basis upon which to deny the dispositive motion to suppress."

Initially, this Court notes that Defendant's mere speculative assertions premised upon a possibility of relief do not entitle Defendant to relief. Defendant has failed to establish that the Assistant State Attorney prosecuting the instant case was aware that the federal government was investigating Officer Sinclair for police corruption. To the contrary, Defendant's own Motion reveals that the State Attorney's Office elected not to participate in the investigation. (Defendant's Motion, page 3.) Accordingly, this Court is not persuaded by Defendant's speculative argument that the State had information concerning Officer Sinclair's investigation at the time of Defendant's trial.

Further, this Court finds that Defendant has failed to establish that he is entitled to relief under <u>Brady</u>. Pursuant to <u>Brady</u>, a defendant's right to due process is violated when the prosecution suppresses evidence favorable to the defendant where the evidence is material either to guilt or punishment. <u>Id</u>. The United States Supreme Court elaborated on the definition of "material" in <u>U.S. v. Agurs</u>, 427 U.S. 97 (1976). In <u>Agurs</u>, the Court explained that "[a] fair analysis of the holding in <u>Brady</u> indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." <u>Id</u>. at 104.

This Court finds that, based on the requirement that the evidence be of such a nature that it might have affected the outcome

13

of the trial, the challenged evidence was not material. To the extent that Defendant claims that the Court relied upon the testimony of Officer Sinclair at the evidentiary hearing on the motion to suppress as the basis to deny the motion, Defendant's claim is refuted by the record. Officer Sinclair testified at the evidentiary hearing about the items found in Defendant's car and on his person once Defendant was arrested. (Exhibit "C.") The Court's denial of the motion to suppress was based on a finding that the arresting officers had probable cause to arrest Defendant. (Exhibit "D.") Since Officer Sinclair's testimony revolved around the actions taken **after** Defendant was arrested, this Court finds that his testimony was not essential to a finding of probable cause to arrest. Officer Sinclair's testimony, therefore, did not provide the basis for the Court's denial of the motion to suppress. The Court's finding of probable cause was supported by the testimony of Officer Nixon who testified about the facts of the undercover drug purchase that ultimately resulted in the arrest of Defendant. (Exhibit "C," pages 4-16.)

Further, this Court finds that several other police officers testified at trial that did not testify at the motion to suppress hearing concerning the arrest of Defendant and the evidence taken from his vehicle and his person. (Exhibit "E.") Specifically, Officer Bishop testified that he assisted in apprehending Defendant and removing him from the suspect vehicle. (Exhibit "E," page 295.) Officer Bishop, further, testified that after removing Defendant from the vehicle, Bishop removed a "baggie of powder cocaine in front of [Defendant] on the dashboard and [a] small manilla [sic] envelope of marijuana next to [Defendant] in the seat." (Exhibit "E," page 295.)

Additionally, there was testimony presented at trial that Defendant told police that the drugs belonged to him. (Exhibit "E," page 314.) Moreover, the co-defendant, Roland

> Ball, testified at trial that after the
> undercover officers gave him the money to
> purchase crack cocaine, he purchased the crack
> cocaine from Defendant. (Exhibit "E," pages
> 259-268.)  In light of the testimony of
> several police officers, the co-defendant, and
> Defendant's own admissions, this Court finds
> that there was substantial evidence, besides
> Officer Sinclair's testimony, that connected
> Defendant to the crimes.  Accordingly, there
> is no reason to believe that any information
> about Officer Sinclair's alleged corruption
> would have changed the outcome of the trial.

Ex. E at 89-91.

This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Respondents contend that the investigation into criminal activity by Jacksonville police officers began in "late 1999" when arrested drug dealers began cooperating with federal authorities regarding the potential corruption within the Jacksonville Sheriff's Office.  Response at 9-10 (citing United States v. Waldon, 363 F.3d 1103, 1108 (11th Cir.), cert. denied, 125 S.Ct.

208 (2004)).  Therefore, at the time Petitioner's trial began on November 15, 1999[5], an investigation and probe into allegations concerning potential corruption within the Jacksonville Sheriff's Office was ongoing; however, Officer Sinclair was not indicted until December 12, 2000, in Case No. 3:00-cr-436-J-25C.

In support of Petitioner's Rule 3.850 motion in state court, Petitioner, through counsel, submitted numerous newspaper articles (published in the year 2000 *after* Petitioner's trial), reporting: that Sheriff Glover, in late 1998, requested federal authorities to investigate what he described as a breach of confidence between police and drug dealers; that a federal-state task force had begun, in late 1998, investigating allegations of Jacksonville police tipping off drug dealers; and, that Sheriff Glover, in February of 2000, due to allegations arising during the probe, took Officer Sinclair's gun, badge and car and sent him home.  Ex. B, Petitioner's Rule 3.850 Motion; Ex. E, attached exhibits A-D.  The evidence offered by Petitioner in support of his contention that the State knew about the investigation is a newspaper article (dated April 23, 2000), reporting that the United States Attorney's Office told State Attorney Harry Shorstein that he could have a prosecutor on the task force, conditioned upon the fact that the selected person would not be permitted to share information with

---

[5] The jury selection began on November 15, 1999, and the testimony was on November 18, 1999.  Tr. at 1, 201.

anyone, including Mr. Shorstein, and Mr. Shorstein declined the offer.  See Petition at 7-8, attached exhibit B, newspaper article dated April 23, 2000, at 3.

Petitioner, here, has not shown that the State, at the time of Petitioner's trial on November 15, 1999, would have been aware of the scope of the federal-state investigation or the nature of Officer Sinclair's involvement.  It appears that Officer Sinclair's involvement (only to the extent that he was under investigation for allegations concerning police misconduct and illegalities) became known in early 2000 when Sheriff Glover took his badge, gun and car and sent him home.  However, Officer Sinclair was not indicted until December 12, 2000 (over one year after Petitioner's trial). Ex. E, attached exhibit F; Petition, attached exhibit A.  Further, it was not until September 21, 2001 (after Petitioner Aaron Smith's conviction became final[6]), that Officer Sinclair entered a guilty plea and was adjudicated guilty in federal court.  See Case No. 3:00-cr-436-J-25C.

Even assuming *arguendo* that the prosecution suppressed favorable evidence, no prejudice has been shown.  As previously stated, the evidence must be material so as to establish prejudice. See Kelley v. Sec'y for Dep't of Corr., 377 F.3d at 1354 (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).  Petitioner has

---

[6] See Court's Order (Doc. #8), filed February 25, 2004 (stating that Petitioner's conviction became final on May 7, 2001).

not shown that the suppressed evidence is prejudicially material. Impeachment evidence is material for the purpose of <u>Brady</u> "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). A reasonable probability is a probability sufficient to undermine confidence in the outcome. <u>Id</u>.

As the trial court concluded in denying Petitioner's Rule 3.850 motion, this was <u>not</u> a case in which Petitioner was found guilty of the charges by a jury based on the testimony of only one police officer. At the trial, the following relevant facts were presented to the jury. As its first witness, the State called Detective Donald Eugene Nixon, who was working with Detective Robert Cook on June 16, 1999. Tr. at 220-21. On that evening, he and Detective Cook were working undercover in a "buy car" that was equipped with audio, so that other police officers on the take down team could hear them on scanners. <u>Id</u>. at 222-23, 224, 228. Roland Ball walked up to their parked buy car and asked Detective Nixon what he needed, and Detective Nixon told him he "was looking for 40 hard," which is forty dollars worth of crack cocaine. <u>Id</u>. at 223, 231. Ball told him he did not have it, but he could take them to a location to get it; Ball got in the back seat of the buy car. <u>Id</u>. at 223-24. Detective Nixon handed Ball the forty dollars, and Ball got out of the car to approach another car for the cocaine.

18

Id. at 224.  Detective Nixon watched Ball walk fifteen feet over to a brown, four-door Oldsmobile vehicle (that was parked in a driveway of a house) and observed him get into the back seat of the car.  Id. at 225.  Ball was in the car for less than one minute and then exited the car and got back into the buy car with two pieces of crack cocaine.  Id. at 225-26.  After Ball handed Detective Nixon the cocaine, Nixon and Cook drove about one-half block and gave the take down signal; Ball was removed from their car and arrested by the arrest team.  Id. at 227.  Nixon and Cook then parked and put the crack cocaine in a sealed baggie and marked it for identification.  Id. at 227, 230.  At the end of that work shift, they placed it in the secured property room at the Sheriff's Office.  Id. at 229, 335-36.

Detective Robert Wayne Cook similarly testified that he was in the buy car with Detective Nixon on June 16, 1999, and that they purchased crack cocaine from Roland Ball with Sheriff's Office money given to Ball by Detective Nixon.  Id. at 327-34.  The Sheriff's Office money used in the transaction was marked and was recovered.  Id. at 343-45.

Officer Aric Paul Sinclair's[7] testimony was relatively brief. Id. at 245-55.  He testified that, on June 16, 1999, he was

_____

[7] While the transcript reflects that Officer Sinclair's first name is "Eric," the Indictment (Petition, attached exhibit A) reflects that his first name is "Aric."  Further, the exhibits attached to his Rule 3.850 motion refer to his first name as "Aric."  Ex. F, attached exhibits.

assigned to the narcotics unit with the Jacksonville Sheriff's Office and was a part of the take down unit. Id. at 246. He described the take down unit as consisting of "officers that once the drug buyers buy the drugs we come in and they give us a description and we come in and arrest the person." Id. Officer Sinclair and Detective Bishop had parked their car two blocks away and could hear via the scanner the take down signal. Id. at 249, 253. Officer Sinclair and Detective Bishop approached the vehicle and removed Petitioner Aaron Smith from the car. Id. at 247-48. Officer Sinclair walked Petitioner "up under a shed."[8] Id. at 248. Officer Sinclair searched Petitioner Aaron Smith and found a twenty dollar bill in his right front pocket, which he turned over to Detective Nixon to verify that it was the Jacksonville Sheriff's Office marked money. Id. at 250-51.

Officer Sinclair, on redirect, clarified his participation as part of the take down unit:

> I didn't see Roland Ball or Mr. Smith until I arrived to the scene as take down because we stay out of the area until they tell us to come in so we know [sic] we don't know who they're buying narcotics from until we arrive at the scene, they give us a description and then we come in and we take that person down.

Id. at 254.

---

[8] The trial transcript reflects that it was raining that night. Tr. at 224, 315, 319, 332, 365, 378.

Roland Ball testified that he was a cocaine user and got in a car with two Caucasian males, agreeing to help them purchase crack cocaine on June 16, 1999.  Id. at 261.  He stated that the two white males gave him forty dollars to purchase two rocks of crack cocaine.  Id. at 266.  While inside a parked car in front of Petitioner's house, Ball gave Petitioner Aaron Smith the forty dollars in exchange for forty dollars worth of crack cocaine.  Id. at 266-68.  He delivered the crack cocaine to the two white males and was later arrested.  Id. at 268, 270.

Detective D.A. Bishop testified that he assisted in apprehending Petitioner Smith.  Id. at 295.  He participated in removing Petitioner Smith from the vehicle and recovered a baggie of powder cocaine in front of him on the dashboard and a small manila envelope of marijuana next to Petitioner Smith in the seat.  Id. at 295-97, 300.  He gave the recovered items to Detective Cook, as lead detective.  Id. at 296-97, 299.  Petitioner Smith, after removal from the car, was handcuffed, and Officer Sinclair "took possession of him."  Id. at 298.

Detective Elliott Van Dyke testified that he assisted in apprehending Petitioner Smith, read him his constitutional rights and wrote the arrest and booking report.  Id. at 310-11, 316.  He asked Petitioner about the drugs found in the car, and Petitioner initially claimed the drugs did not belong to him and then later he

said that the drugs found in the car did belong to him.   Id. at
314-15, 324, 326.

Thus, based on the testimony presented at the trial, there was
sufficient, if not overwhelming, evidence to convict Petitioner
even without Officer Sinclair's testimony.   While the subsequent
federal conviction of Officer Sinclair is obviously a serious
matter and the State's failure to disclose such a matter, whether
advisedly or inadvertently, might, in other circumstances,
constitute a Brady violation, here the State's failure to do so
does not rise to the level of materiality, as the state court
found.   Ex. E at 89-91.   Petitioner, even in the absence of the
allegedly undisclosed evidence, received a fair trial, one which
resulted "in a verdict worthy of confidence." Kyles v. Whitley,
514 U.S. 419, 434 (1995); Breedlove v. Moore, 279 F.3d at 962
(citation omitted); Bradley v. Nagle, 212 F.3d 559, 566-67 (11th
Cir. 2000), cert. denied, 531 U.S. 1128 (2001).

## VII. Conclusion

Any other claims not specifically addressed are found to be
without merit.   Accordingly, for all of the above-stated reasons,
the Petition will be denied and this case will be dismissed with
prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of December, 2005.

TIMOTHY J. CORRIGAN
United States District Judge

sc 12/13
c:
Aaron A. Smith
Ass't Attorney General (Hill)